**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

JANINE FALARDO-WELLER,

          Plaintiff,

   v.

KILOLO KIJAKAZI,

          Defendant.

CIVIL ACTION NO. 3:22-CV-01026

(MEHALCHICK, M.J.)

<u>**MEMORANDUM**</u>

This is an action brought under 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security (hereinafter, "the Commissioner") denying Plaintiff Janine Falardo-Weller ("Falardo-Weller")'s claims for disability insurance benefits ("DIB") under Title II of the Social Security Act.[1] (Doc. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 11). For the reasons expressed herein, and upon detailed consideration of the arguments raised by the parties in their respective briefs, the Commissioner's decision shall be VACATED.

I.   **BACKGROUND AND PROCEDURAL HISTORY**

On June 2, 2015, Falardo-Weller filed an application for disability insurance benefits, alleging disability beginning on October 26, 2014. (Doc. 13-2, at 18). Falardo-Weller's claims were initially denied by the Social Security Administration on October 8, 2015, prompting Falardo-Weller's request for a hearing, which was held before Administrative Law Judge

---

[1] The Court granted Falardo-Weller's motion to proceed *in forma pauperis* in a separate order. (Doc. 4).

("ALJ") George C. Yatron on August 9, 2017. (Doc. 13-2, at 18). In a written opinion dated November 22, 2017, the ALJ determined that Falardo-Weller was not disabled and, therefore, not entitled to the benefits sought. (Doc. 13-2, at 15). Falardo-Weller appealed the decision to the Appeals Counsel, who denied Falardo-Weller's request for review on July 9, 2018. (Doc. 13-2, at 2).

Thereafter, Falardo-Weller filed a complaint under 42 U.S.C. § 405(g) seeking judicial review of the ALJ's decision denying her claim for benefits. (Doc. 13-9, at 23). On May 9, 2020, United States Magistrate Judge Schwab issued a report and recommendation affirming the Commissioner's denial. (Doc. 13-9, at 27-45). On May 19, 2020, United States District Judge Conner declined to adopt Judge Schwab's recommendation, finding that the ALJ failed to consider Falardo-Weller's claims as to the severity and frequency of her migraine and seizure episodes, and erroneously rejected Falardo-Weller's subjective complaints without providing a sufficient explanation. (Doc. 13-9, at 49-55). Therefore, Judge Conner vacated the ALJ's decision and remanded the matter to the Commissioner with instructions to conduct a new administrative hearing, develop the record fully, and evaluate the evidence appropriately in accordance with the Court's accompanying memorandum. (Doc. 13-9, at 60).

On December 22, 2020, ALJ Margaret M. Gabell held a second hearing. (Doc. 13-8, at 11). In a written opinion dated June 3, 2021, the ALJ again determined that Falardo-Weller was not disabled and, therefore, not entitled to the benefits sought. (Doc. 13-8, at 8). Falardo-Weller appealed the decision to the Appeals Counsel, who denied Falardo-Weller's request for review on June 9, 2022. (Doc. 13-8, at 2).

On June 29, 2022, Falardo-Weller initiated the instant action by filing a complaint. (Doc. 1). The Commissioner responded on October 19, 2022, providing the requisite transcripts from the disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs, with Falardo-Weller arguing one main error warrants reversal or remand. (Doc. 16; Doc. 21).

## II.   STANDARD OF REVIEW

In order to receive benefits under Title II of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509. To satisfy this requirement, a claimant must have a severe physical or mental impairment[2] that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a). Additionally, to be eligible to receive benefits under Title II of the Social Security Act, a claimant must be insured for disability insurance benefits. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131.

### A.   ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. *Hess v. Comm'r Soc. Sec.*, 931

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

F.3d 198, 200-01 (3d Cir. 2019); 20 C.F.R. § 404.1520(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment;[3] (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity ("RFC"); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. § 404.1512(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1512(f).

    B. JUDICIAL REVIEW

    In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court's review is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. Mar. 28, 2012).

---

[3] An extensive list of impairments that warrant a finding of disability based solely on medical criteria, without considering vocational criteria, is set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1 (effective June 12, 2015, through July 19, 2015).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. Nov. 3, 2003).

The question before the Court, therefore, is not whether Falardo-Weller is disabled, but whether the Commissioner's finding that Falardo-Weller is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner.").

III.  **THE ALJ'S DECISION**

In a decision dated June 3, 2021, the ALJ determined Falardo-Weller "was not under a disability, as defined in the Social Security Act, at any time from October 26, 2014, the alleged onset date, through June 30, 2017, the date last insured." (Doc. 13-8, at 31). The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. *See* 20 C.F.R § 404.1520. At the onset, the ALJ determined that Falardo-Weller last met the insured status requirements of the Social Security Act on June 30, 2017. (Doc. 13-8, at 13).

A.  STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R § 404.1520(a)(4)(i). If a claimant is engaging in SGA, the Regulations deem them not disabled, regardless of age, education, or work experience. 20 C.F.R. § 404.1520(b). SGA is defined as work activity—requiring significant physical or mental activity—resulting in pay or profit. 20 C.F.R. § 404.1572. In making this determination, the ALJ must consider only the earnings of the claimant. 20 C.F.R. § 404.1574. Here, the ALJ determined that Falardo-Weller "did not engage in substantial gainful activity during the period from her alleged onset date of October 26, 2014, through her date last insured of June 30, 2017." (Doc. 13-8, at 14).

B.  STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is severe or a combination of impairments that are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the ALJ determines that a claimant does not have an "impairment or combination of impairments which significantly limits [their] physical or

- 6 -

mental ability to do basic work activities, [the ALJ] will find that [the claimant] does not have a severe impairment and [is], therefore not disabled." 20 C.F.R. § 404.1520(c). If a claimant establishes a severe impairment or combination of impairments, the analysis continues to the third step. Here, the ALJ found that Negron had the following medically determinable severe impairments: POTS, gastroparesis; spine disorder; migraines; tachycardia; mitral valve prolapse; syncope; seizures; Graves' disease; hypertension; GERD; and adjustment disorder. (Doc. 13-8, at 14). In addition, the ALJ found that Negron had the following non-severe impairments: diminished hearing and asthma. (Doc. 13-8, at 14).

C.  Step Three

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1525; 404.1526. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairments meet these listings, then the claimant is considered disabled, otherwise, the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that none of Falardo-Weller's impairments, considered individually or in combination, met or equaled a Listing. (Doc. 13-8, at 14-15). Specifically, the ALJ considered Listings 1.15 (disorders of the skeletal spine resulting in compromise of a nerve root(s)); 4.05 (recurrent arrhythmias); 11.02 (epilepsy), 5.00 (digestive system); and 12.15 (trauma and stressor-related disorders). (Doc. 13-8, at 14-18)

D.  Residual Functional Capacity

Between steps three and four, the ALJ determines the claimant's RFC, crafted upon consideration of the medical evidence provided. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 404.1529(b)–(c).

Falardo-Weller alleged that her impairments caused the following symptoms: migraines, blackouts, falling, memory loss, nausea, leg swelling, blurred vision, dizziness, low blood pressure, seizures, chest pain, and heart fluttering. (Doc. 13-8, at 19). The ALJ found that while Falardo-Weller's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Falardo-Weller's statements about the intensity, persistence, and the limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-8, at 21). The ALJ then went on to detail Falardo-Weller's medical records and treatment history, activities of daily living, and medical opinion evidence. (Doc. 13-14, at 28-36). After weighing and considering the evidence of record, the ALJ determined that Falardo-Weller had the RFC "to perform light work as defined in 20 CFR 404.1567(b)," with additional limitations:[4]

_____

[4] The limitation to "light work" "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). A job will fall under this category if it requires lifting little weight, yet a good

occasional postural activities; no ladders, ropes or scaffolds; no exposure to unprotected heights; occasional climbing ramps and stairs; no kneeling or crawling; avoid temperature extremes; occasional exposure to dust, odors, wetness, gases, fumes and poorly ventilated areas; avoid driving or operating moving machinery. Unskilled work, involving simple, routine, tasks, making simple decisions, tolerating only occasional changes in the workplace, no limits on interacting with coworkers, supervisors or the public. Alternate between standing/sitting every 30-60 minutes, would need a 10-minute change of position, but would be able to remain on task.

(Doc. 13-8, at 18-19).

E.  STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform [her] past relevant work despite his limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)).

Here, based on the testimony adduced from a vocational expert at Falardo-Weller's administrative hearing, the ALJ determined that Falardo-Weller is unable to perform her past

---

deal of walking or standing, or mostly sitting with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b). An individual considered capable of performing a full range of light work must be able to do substantially all of these activities. 20 C.F.R. § 404.1567(b).

relevant work as a grocery clerk and stock clerk. (Doc. 13-8, at 29). Thus, the ALJ proceeded to step five of the sequential analysis.

      F.  S<small>TEP</small> F<small>IVE</small>

At step five of the sequential analysis process, an ALJ considers the claimant's age, education, and work experience to see if a claimant can make the adjustment to other work. 20 C.F.R. § 404.1520(a)(4)(v). These factors are not considered when evaluating a claimant's ability to perform past relevant work. 20 C.F.R. § 404.1560(b)(3). If a claimant has the ability to make an adjustment to other work, they will not be considered disabled. 20 C.F.R. § 404.1520(a)(4)(v). Here, the ALJ made vocational determinations that Falardo-Weller was 30 years old on the alleged onset date, defined as a younger individual age 18-49 by the Regulations. (Doc. 13-8, at 29); *see* 20 C.F.R. § 404.1563. The ALJ also noted that Falardo-Weller "has at least a high school education" as considered in 20 C.F.R. § 404.1564. (Doc. 13-8, at 29). The ALJ determined that "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform, considering [Falardo-Weller]'s age, education, work experience, and [RFC]." (Doc. 13-8, at 29); *see* 20 C.F.R. § 404.1569; 404.1569(a). The ALJ specifically identified occupations of bench assembler, cashier, and office helper, all with open positions ranging from 500,000 to 1,225,000 nationally. (Doc. 13-8, at 30). Accordingly, the ALJ determined that Falardo-Weller is not disabled and denied her applications for benefits. (Doc. 13-8, at 31).

IV.   **D<small>ISCUSSION</small>**

On appeal, Falardo-Weller contends that substantial evidence does not support the ALJ's step three analysis because she did not consider Falardo-Weller's seizure disorder under Listing 12.07 and incorrectly determined that there was no medical evidence that

Falardo-Weller's migraine headache disorder could satisfy Listing 11.02. (Doc. 16, at 9-14). In response, the Commissioner argues the ALJ appropriately concluded that Falardo-Weller's impairments did not meet or medically equal a listed impairment. (Doc. 21, at 25). Thus, the Commissioner contends substantial evidence supports the ALJ's decision. (Doc. 21, at 26-32).

At step three of the disability analysis, the ALJ considers whether the combination of the claimant's medically determinable impairments meets or is equal to one of the impairments listed in 20 C.F.R., Pt. 404, Subpt. P, Appx. 1 ("listings"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant has an impairment that meets the twelve-month duration requirement and meets or equals all the criteria of a listing, the claimant is found disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

However, to qualify for benefits by showing that an impairment (or combination of impairments) is equivalent to a listed impairment, the claimant bears the burden of presenting "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) (emphasis in original; citations omitted). An impairment, no matter how severe, that meets or equals only some of the criteria for a listed impairment is not sufficient. *Sullivan*, 493 U.S. at 531. Here, the ALJ found that Falardo-Weller does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. 13-8, at 14).

A. The ALJ erred in evaluating Falardo-Weller's condition under Listing 11.02 at step three.

Falardo-Weller asserts that remand is warranted because substantial evidence does not

support the ALJ's finding that there was no documentation to show that plaintiff was unable to function, or had significantly reduced functioning during a headache, or that the headaches did not occur with such frequency to equal Listing 11.02. (Doc. 16, at 11-14). Falardo-Weller contends that the ALJ's analysis of her headaches under Listing 11.02 is wanting and flawed because: (1) the ALJ's mention of medication changes is not a probative consideration of whether the listing is satisfied; (2) the ALJ's reference to a normal EMG and normal gait with intact reflexes and sensation not being indicative of a marked limitation in physical limitations has nothing to do with the headache impairment; and (3) the evidence of record satisfies Listing 11.02 as it contains documentation of a 15-year history of headaches that worsened over time in terms of frequency and severity. (Doc. 16, at 11-14).

Conversely, the Commissioner contends that the ALJ carefully considered whether Falardo-Weller's condition met or medically equaled Listing 11.02 and addressed why her headaches did not satisfy this listing. (Doc. 21, at 26). The Commissioner argues that the ALJ had a medical expert review the evidence, who specifically opined that Falardo-Weller did not satisfy the criteria of any listing, including listing 11.02. (Doc. 21, at 26). The Commissioner also asserts that the record reflects that Falardo-Weller had been prescribed Topamax for migraine prevention and treatment throughout the relevant period, and her physicians document that this treatment was beneficial. (Doc. 21, at 27-28).

As described in SSR 19-4p, migraines are included among the category of "primary headache disorders," which means they "occur independently and are not caused by another medical condition." SSR 19-4p, 2019 WL 4169635, at *3. The medical community diagnoses migraines and other primary headaches "only after excluding alternative medical and psychiatric causes of a person's symptoms." SSR 19-4p, 2019 WL 4169635, at *4. "Migraines

are vascular headaches involving throbbing and pulsating pain caused by the activation of nerve fibers that reside within the wall of brain blood vessels traveling within the meninges (the three membranes covering the brain and spinal cord)." SSR 19-4p, 2019 WL 4169635, at *3.

SSR 19-4p explains how primary headache disorders, like migraines, are evaluated at step three. While a primary headache disorder is not a listed impairment, it may, "alone or in combination with another impairment(s), medically equal[ ] a listing." SSR 19-4p, 2019 WL 4169635, at *7. The "most closely analogous listed impairment" for a primary headache disorder is found in Listing 11.02, addressing epilepsy. SSR 19-4p, 2019 WL 4169635, at *7. "While uncommon, a person with a primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures)," which may result in a finding that the claimant's primary headache disorder "medically equals the listing." SSR 19-4p, 2019 WL 4169635, at *7. Thus, an ALJ should look to Listings 11.02B and 11.02D in assessing whether a claimant's migraine headache impairment medically equals a listing.

Listing 11.02B describes dyscognitive seizures "occurring at least once a week for at least 3 consecutive months . . . despite adherence to prescribed treatment." 20 C.F.R. Part 404, Subpart P, App.1, § 11.02B (internal citations omitted). In deciding whether a claimant's migraines are equal in severity and duration to the criteria in 11.02B, an ALJ may also consider the following additional factors:

> [a] detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for

treating a primary headache disorder can produce drowsiness, confusion, or inattention); and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations).

SSR 19-4p, 2019 WL 4169635, at *7.

Listing 11.02D requires seizures "occurring at least once every 2 weeks for at least 3 consecutive months . . . despite adherence to prescribed treatment," along with "a marked limitation in one of the following":

1. Physical functioning; or

2. Understanding, remembering, or applying information; or

3. Interacting with others; or

4. Concentrating, persisting, or maintaining pace; or

5. Adapting or managing oneself.

20 C.F.R. Part 404, Subpart P, App.1, § 11.02D (internal citations omitted).

In evaluating whether a claimant's migraine impairment equals the criteria in Listing 11.02D, the ALJ may also consider "the same factors" considered for Listing 11.02B. SSR 19-4p, 2019 WL 4169635, at *7.

In assessing whether a claimant has met or equaled a listed impairment, the ALJ must provide an explanation of his or her reasoning which is sufficient to permit a court to engage in a meaningful judicial review. *See Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119-20 (3d Cir. 2000). "However, an ALJ need not 'use particular language or adhere to a particular format in conducting his analysis.'" *Kulbacki v. Colvin*, Civ. No. 15-297, 2016 WL

- 14 -

2609984, at *6 (W.D. Pa. May 6, 2016) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). Here, regarding Falardo-Weller's migraine headache disorder, the ALJ stated:

> [Falardo-Weller] does not meet the requirements of listing 11.02 as the record fails to establish evidence of epilepsy, documented by a detailed description of a typical seizure characterized by one of the following: (A) generalized tonic-clonic seizures, occurring at least once a month for at least 3 consecutive months despite adherence to prescribed treatment; or (B) dyscognitive seizures occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment, or (C) generalized tonic-clonic seizures, occurring at least once every 2 months for at least 4 consecutive months despite adherence to prescribed treatment and a marked limitation in (1) physical functioning, (2) understanding, remembering, or applying information, (3) interacting with others (4) concentrating, persisting, or maintaining pace, or (5) adapting or managing oneself; or (D) dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment and a marked limitation in 1) physical functioning, (2) understanding, remembering, or applying information, (3) interacting with others (4) concentrating, persisting, or maintaining pace, or (5) adapting or managing oneself. The record reflects [Falardo-Weller] had numerous physical impairments as suffered from migraine headaches as well as syncope. Despite reporting up to four seizures per week, some with loss of consciousness, others with loss of bladder and bowel control and shaking, [Falardo-Weller]'s neurological examinations have been noted as more consistent with nonepileptic spells (Exhibit 22F). [Falardo-Weller]'s MRI imaging was noted as consistent with migraines (Exhibit 41F). An EEG was noted as normal, although it captured multiple clinical events, some involved facial twitching and others involved burning smell, staring and unresponsiveness. It was felt this was consistent with psychogenic nonepileptic events (Exhibit 22F). [Falardo-Weller] was prescribed Topamax for migraine and seizure control. Physical examinations have shown [Falardo-Weller] to have some decreased strength, nevertheless, EMG testing of the upper extremities were within normal limits and the claimant has maintained a normal gait, with intact reflexes and sensation, not indicative of marked limitations in physical functioning. The record also indicates no more than moderate limitations in mental functioning. The evidence does not support the severity of listing 11.02.

> The undersigned notes there is no Listing that specifically addresses migraines; however, the undersigned has considered the effects of migraines under listing 11.02 for epilepsy as instructed in SSR 19-4p. This guidance indicates a primary headache disorder, alone or in combination with another impairment, may medically equal listing 11.02, which is the most closely analogous listing for a primary headache disorder. SSR 19-4p advises considering parts B and D for dyscognitive seizures. Listing 11.02B requires dyscognitive seizures occurring

- 15 -

at least once a week for at least 3 consecutive months despite adherence to prescribed treatment. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02B, we consider: a detailed description from an acceptable medical source of a typical headache event, including all associated phenomena; the frequency of headache events; adherence to prescribed treatment; side effects of treatment; and limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects daytime activities, or other related needs and limitations). Paragraph D of listing 11.02 requires dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment, and marked limitation in one area of functioning. To evaluate whether a primary headache disorder is equal in severity and duration to the criteria in 11.02D, we consider the same factors we consider for 11.02B and we also consider whether the overall effects of the primary headache disorder on functioning results in marked limitation in: physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. The evidence does not support the severity of listing 11.02. An MRI showed white matter changes which could be seen in migraines (Exhibit 41F). A December 2016 MRA of the brain was normal (Exhibit 50F). Despite testimony of 8-10 migraines per week and reports to treating providers of as many as 2-4 migraines per week, [Falardo-Weller] has been maintained on Topamax, without the need for a switch in medication. Further, physical examinations have shown the claimant to have some decreased strength, nevertheless, EMG testing of the upper extremities were within normal limits and [Falardo-Weller] has maintained a normal gait, with intact reflexes and sensation, not indicative of marked limitations in physical functioning. The record also indicates no more than moderate limitations in mental functioning. Therefore, the preponderance of the evidence does not support medical equivalence of Listing 11.02.

(Doc. 13-8, at 15-17).

Upon consideration of the ALJ's decision, the Court finds the ALJ's analysis to be deficient. Because the ALJ's analysis did not individually evaluate any sections of Listing 11.02, the ALJ's decision prevents the Court from conducting a meaningful, albeit deferential, review. Further, the Court finds that there is evidence of record to suggest Falardo-Weller may meet the Listing 11.0 requirements. For example, as the ALJ notes, Falardo-Weller

reported suffering from 8-10 migraines per week and medical treatment records reported many as 2-4 migraines per week. (Doc. 13-8, at 16). Thus, there can be little doubt that Falardo-Weller would meet the frequency requirement of Listing 11.02B: i.e., migraine headaches "occurring at least once a week for at least 3 consecutive months." *See* 20 C.F.R. Part 404, Subpart P, App.1, § 11.02B. The Commissioner does not contend to the contrary. (Doc. 21). Falardo-Weller also reported that her migraines are associated with nausea and sensitivity to light, and that she experiences pain as an 8/10 on the visual analog scale. (Doc. 13-2, at 48; Doc. 13-7, at 472-73, 500-01, 964-65). There is no evidence indicating that Falardo-Weller was noncompliant with the treatment requirement, and she reported that her medications caused side effects of dizziness, nausea, and vomiting. (Doc. 13-2, at 47). Additionally, the ALJ's citation that the Falardo-Weller has found Topamax to be beneficial does not cure the problem as "a meaningful explanation of how an ALJ resolves contradictory evidence requires that the ALJ engage and discuss the contradictory evidence and explain why it is overcome by evidence that supports the ALJ's conclusion." *Brown v. Kijakazi*, No. 20-CV-05391-RAL, 2021 WL 5356802, at *6 (E.D. Pa. Nov. 17, 2021). While this evidence on its own may not be sufficient for a finding of significantly reduced functioning, the ALJ must explain why this evidence does not undermine his finding. *See Brown*, 2021 WL 5356802 (remanding decision where medical record undermined ALJ's assertion that plaintiff does not experience significantly reduced functioning during a headache and ALJ failed to address contradictory evidence).

Therefore, the Court finds that because the record reflects evidence that would tend to support application of Listing 11.02, this case should be remanded. *See Tyson v. Kijakazi*, No. 1:21-CV-855, 2022 WL 3975002, at *15 (M.D. Pa. July 25, 2022) ("Because the ALJ did not

make findings needed to determine if [plaintiff] satisfied the criteria of Listing 11.02B, and because the record reflects evidence that would tend to support application of that listing, this case should be remanded") (citing *Corinne C. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1034, 2022 WL 1590818, at *17-20 (S.D. Ohio May 19, 2022) (remanding decision where ALJ did not mention Listing 11.02 and the "record evidence . . . strongly suggests plaintiff's migraine impairment may equaled listing 11.02B")).

B. The Court declines to address Falardo-Weller's remaining arguments.

Because the Court has vacated and remanded the decision of the Commissioner for further consideration, concluding that the ALJ's step three evaluation of Listing 11.02 is not supported by substantial evidence, the Court declines to address Falardo-Weller's remaining arguments. "A remand may produce different results on these claims, making discussion of them moot." *Burns v. Colvin*, 156 F.Supp.3d 579, 598 (M.D. Pa. Jan. 13, 2016). The Court's evaluation of Falardo-Weller's additional contentions would be futile given that the ALJ's reconsideration of whether Falardo-Weller's epilepsy and migraine headaches satisfy the requirements of Listing 11.02, in combination with her other impairments, may yield a different result.

V. **Remedy**

As a final matter, the Court addresses whether this case should be remanded to the Commissioner for further administrative proceedings or whether reversal and an award of benefits is appropriate. The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the case for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100–01 (1991). However, the Third Circuit has

advised that benefits should only be awarded where "the administrative record of the case has been fully developed and when substantial evidence in the record as a whole indicates that the claimant is disabled and entitled to benefits." *Morales v. Apfel,* 225 F.3d 310, 320 (3d Cir. 2000); *see e.g. Fla. Power & Light Co. v. Lorion,* 470 U.S. 729, 744 (1985) ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Here, the appropriate measure is to remand for further consideration on the issue of whether Falardo-Weller meets the medical equivalence of Listing 11.02. The analysis on remand may impact, and thus include, further consideration of other issues raised by Falardo-Weller on this appeal. Upon remand, the ALJ is instructed to consider and make specific findings as to all relevant probative medical evidence.

VI.   **CONCLUSION**

Based on the foregoing, the Commissioner's decision to deny Falardo-Weller's disability benefits is **VACATED**, and the case is **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Memorandum Opinion. Further, the Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

Dated: September 18, 2023                    s/ Karoline Mehalchick
                                                          **KAROLINE MEHALCHICK**
                                                          **Chief United States Magistrate Judge**